**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION<br>800 K Street, N.W., Suite 1000<br>Washington, DC 20001,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE<br>1111 Constitution Avenue, N.W.<br>Washington, DC 20224,<br><br>Defendant. | Case No.: 26-cv-3812<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

**<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

## INTRODUCTION

1. This lawsuit challenges Defendant Internal Revenue Service's (IRS) decision not to comply with a final and binding arbitration decision.

2. The arbitration decision stemmed from a union grievance filed through the IRS and Plaintiff National Treasury Employees Union's (NTEU) negotiated grievance procedure. That negotiated grievance procedure is contained in the parties' collective bargaining agreement (CBA).

3. NTEU filed the underlying grievance before a March 2025 executive order excluded the IRS from the federal labor statute. NTEU does not challenge that executive order here and is doing so in separate litigation. The underlying grievance likewise predates the IRS's February 2026 notice to NTEU that it was

unilaterally terminating the parties' CBA. This lawsuit does not challenge that notice of termination and, for purposes of this lawsuit, accepts it as valid.

4. Nothing in the executive order purported to retroactively strip IRS employees or their union of the rights that had accrued under their CBA prior to the order. So too with respect to the IRS's notice that the CBA would be terminated.

5. An unbroken line of cases confirms the well-established principle of federal labor-relations law that a CBA termination does not retroactively nullify rights that accrued prior to its termination. Under *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, and its progeny, an arbitrator retains jurisdiction over a grievance that arose before the CBA termination. 430 U.S. 243, 255 (1977*); see also Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) (citing *Nolde Bros.*, 460 U.S. at 251).

6. The Federal Labor Relations Authority (FLRA) has not decertified NTEU as the exclusive bargaining representative for IRS employees. But even if it had, contractual rights that accrue before decertification remain. *See, e.g., Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. & its Amalgamated Loc. 1369 v. Telex Comput. Prods., Inc.*, 816 F.2d 519, 523 (10th Cir. 1987) ("[D]ecertification does not retroactively obliterate contract rights"); *accord U.S. Gypsum Co. v. United Steel Workers of Am.*, 384 F.2d 38, 45–46 (5th Cir. 1967). This principle of labor-relations law has also been recognized in the federal sector. *See, e.g.*, *Dep't of the Air Force*, 4 F.L.R.A. 22, 23 (1980).

7. After the arbitrator issued the telework-related decision at issue here, the IRS sent out a memorandum to its managers stating that it did not recognize the decision and that the "current telework policy remains in effect." The IRS has not taken any steps to challenge the arbitration decision's validity. Nor does its behavior to date reveal any intent to do so in the future.

8. NTEU asks the Court to declare that the IRS's directive stating that it will not comply with the arbitrator's decision is contrary to law and arbitrary and capricious, in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. NTEU further asks the Court to vacate the IRS's final agency action.

## JURISDICTION & VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the APA, 5 U.S.C. §§ 701–706. The APA waives sovereign immunity for NTEU's claims seeking relief other than money damages. *Id.* § 702. The IRS's post-arbitration determination constitutes final agency action for which NTEU has no other adequate remedy in a court. *Id.* § 704.

10. Venue is proper in this district under 28 U.S.C. § 1391(e) because Defendant IRS is an agency of the United States headquartered in Washington, D.C. and a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

11. Plaintiff NTEU is an unincorporated labor organization with its principal place of business at 800 K Street, N.W., Suite 1000, Washington, D.C. 20001. NTEU has represented IRS employees in some capacity for almost ninety

years. NTEU executed, with the IRS, the CBA and Memorandum of Understanding (MOU) underlying the grievance and arbitration at issue here.

12. NTEU brings this action on its own behalf. NTEU filed the grievance with the IRS and obtained a favorable arbitration decision. That decision ordered, among other things, that the IRS reimburse NTEU for certain costs and expenses associated with the arbitration proceeding. The IRS decision at issue here thus harms NTEU financially, in addition to depriving NTEU of the benefit of the arbitration decision's substantive rulings.

13. NTEU also brings this action on behalf of its IRS members. The arbitrator's decision directed the IRS to rescind personnel actions based, in whole or in part, on its cancellation of telework and remote-work arrangements and to provide other relief. The IRS's determination deprives those employees of the benefit of the relief ordered on their behalf. NTEU members harmed by the IRS's cancellation of telework and repudiation of the arbitrator's decision include Janice Schultz and Amanda Bowman. *See infra* ¶¶ 26–27.

14. Defendant IRS is a bureau of the Department of the Treasury, a cabinet-level agency of the United States government. The IRS is headquartered at 1111 Constitution Avenue, N.W., Washington, D.C. 20224. The IRS issued a July 23, 2026 "Leader's Alert" email memorandum announcing that it would not comply with the relevant arbitration decision and that its existing telework policy would remain in effect. Att. A (the Directive). The IRS maintains that position and refuses to recognize the arbitration decision.

## STATEMENT OF CLAIMS

15. Congress deliberately modeled review of federal-sector arbitral decisions on the private-sector labor-arbitration regime. *Griffith v. FLRA*, 842 F.2d 487, 491 (D.C. Cir. 1988). Accordingly, federal-sector arbitration draws on the common law of labor arbitration. *See Local 2578, AFGE v. GSA*, 711 F.2d 261, 266 n.14 (D.C. Cir. 1983).

16. Under that law, a CBA's termination does not automatically extinguish the parties' obligation to arbitrate disputes arising under it. *Nolde Bros.*, 430 U.S. at 251–52. Instead, the duty continues when a grievance concerns pre-termination events, accrued or vested rights, or obligations that survive under ordinary contract principles. *Litton*, 501 U.S. at 205–06, 205–08.

17. The Federal Circuit has applied these private-sector principles in the federal labor-relations context, holding that a claim arising while an employee was covered by a CBA remained subject to the contract's negotiated grievance procedures even after the employee retired. *Muniz v. United States*, 972 F.2d 1304, 1312–13 (Fed. Cir. 1992) (quoting *Litton*, 501 U.S. at 205–06) (citing *Nolde Bros.*, 430 U.S. at 252), *superseded by statute on other grounds*.

### The Grievance-Arbitration Process

18. From 2022 until at least the IRS's notice of termination in February 2026, NTEU and the IRS were parties to their 2022 National Agreement, as amended by a 2025 Addendum (collectively, the CBA).

19. Article 42 of the CBA established a negotiated grievance procedure through which either party could challenge violations of the agreement or

applicable law. Article 43 provided for binding arbitration of unresolved grievances before a rotating panel of arbitrators that the parties jointly select.

20. Article 43 explained that "[t]he arbitrator shall have the authority to make all arbitrability and/or grievability determinations" and required that those determinations precede consideration of the grievance's merits. *Id.* art. 43, § 4.A.6.

21. Article 43 also made clear that arbitrations must proceed even if one party refused to participate in arbitration. It provided that "[t]he arbitrator shall hold the hearing notwithstanding that one party refuses to attend the arbitration." In this circumstance, the arbitrator must first determine whether the grievance is properly before him and, if so, proceed to the merits. Article 43 further required the arbitrator and the participating party to serve transcripts, briefs, and decisions on the absent party. *Id.* art. 43, § 5.A.

22. The CBA governed IRS employees' telework arrangements. It required IRS management to modify, suspend, or terminate approved arrangements only on a case-by-case basis, based on business needs or on employee performance or conduct. *Id.* art. 50, § 2.L. The parties' Remote Work MOU separately governed the remote work pilot program and established procedures for terminating employees' participation or discontinuing the program.

**<u>NTEU's Grievance</u>**

23. On January 20, 2025, President Trump issued a Presidential Memorandum directing federal agencies to terminate remote-work arrangements and require employees to return to agency offices in person on a full-time basis, subject to exemptions that agency heads deemed necessary. *Return to In-Person*

*Work*, 90 Fed. Reg. 8251 (Jan. 20, 2025). The Presidential Memorandum directed agencies to implement its instructions "consistent with applicable law." *Id.*

24. On February 28, 2025, Treasury issued its Plan to Return to the Workplace. The IRS issued a memorandum implementing Treasury's directive that same day. The IRS canceled frequent and recurring telework arrangements and the remote work pilot program without following the procedures in the CBA or the Remote Work MOU.

25. The IRS's unlawful cancellation of telework arrangements harmed numerous IRS employees who are NTEU members.

26. One such NTEU member is Janice Schultz. Before the IRS's cancellation of telework, she had been on a frequent telework schedule for many years, meaning that she mostly worked from home but also occasionally went to the field or the office. Since the IRS's cancellation of telework, Ms. Schultz no longer teleworks. Denial of telework has harmed her because commuting has led to her having increased gas costs, additional wear and tear on her car, and a longer workday.

27. Another NTEU member harmed by the IRS's cancellation of telework is Amanda Bowman. Before the IRS's cancellation of telework, Ms. Bowman teleworked three or four days a week. Since the agency's cancellation of telework, Ms. Bowman no longer teleworks. This has harmed her because commuting has led to her having increased gas costs, additional wear and tear on her car, and a longer workday.

28. On March 5, 2025, NTEU filed a national institutional grievance challenging the IRS's actions. The grievance alleged contractual and statutory violations.

**<u>The IRS Continued Processing NTEU's Grievance After the Exclusions Order</u>**

29. On March 27, 2025, President Trump issued Executive Order 14251, *Exclusions From Federal Labor-Management Relations Programs*, 90 Fed. Reg. 14,553 (Mar. 27, 2025) (Exclusions Order). The Exclusions Order excluded the IRS, among others, from the federal collective-bargaining statute, Chapter 71 of title 5. Exclusions Order § 2, 90 Fed. Reg. at 14,553–54.

30. Section 6 of the Exclusions Order makes clear that CBAs with excluded agencies remained in force after the Order's issuance. It spoke of terminations as a separate action and directed excluded agency heads, "upon termination of the applicable collective bargaining agreement," to "terminate agency participation" in pending grievance proceedings and other administrative proceedings under Chapter 71. *Id.* § 6, 90 Fed. Reg. at 14,556.

31. The IRS continued processing NTEU's grievance after issuance of the Exclusions Order. The IRS met with NTEU to discuss the grievance on March 28, 2025. On May 15, 2025, after the IRS failed to issue a written decision on the grievance within the deadline that the CBA prescribes, NTEU submitted the matter to arbitration.

32. On May 27, 2025, the IRS belatedly issued its written grievance decision. The IRS acknowledged that the grievance presented no procedural defects but denied it on the merits.

33. On September 18, 2025, the IRS advised NTEU that it had not terminated the CBA and was holding requests to bargain in abeyance pending the outcome of litigation challenging the Exclusions Order.

34. On February 27, 2026—nearly one year after NTEU filed its grievance and more than nine months after it submitted the matter to arbitration—the IRS notified NTEU that it was terminating the CBA pursuant to the Exclusions Order.

35. On March 27, 2026, the IRS notified the parties' national arbitration panel that its arbitrators were "no longer authorized to accept or adjudicate any grievances involving the IRS and NTEU" and that the IRS had "withdrawn from all grievance/arbitration proceedings with NTEU." The IRS thereby withdrew from the pending arbitration of NTEU's return-to-office grievance.

**The Arbitration Continued After the IRS's Withdrawal**

36. After the arbitrator originally assigned to the grievance withdrew from the parties' jointly selected national panel of arbitrators, NTEU reassigned the pending arbitration to another arbitrator on April 3, 2026. The new arbitrator sought clarification from the parties concerning the IRS's withdrawal and NTEU's request to proceed. IRS counsel received the request but did not respond.

37. On April 17, 2026, the arbitrator ordered the parties to attend a hearing on May 14, 2026. The IRS did not appear at the hearing.

38. Consistent with Article 43, the arbitrator first considered whether the grievance was properly before him. After receiving NTEU's argument and reviewing the evidence, he tentatively determined that the grievance was arbitrable and proceeded to hear the merits. NTEU presented witness testimony and documentary evidence. Both parties were afforded an opportunity to address the threshold arbitrability issue and the merits in post-hearing briefs. The IRS did not submit written argument on either issue.

**The Arbitrator's Decision in NTEU's Favor**

39. The arbitrator issued his decision on July 17, 2026. He found that NTEU's grievance remained properly before him notwithstanding the IRS's withdrawal. He concluded that he need not decide the validity of the Exclusions Order or the IRS's CBA termination because the underlying dispute arose—and NTEU filed its grievance—while the agreement remained in effect. Applying relevant legal authorities holding that contractual grievance obligations may survive termination of a CBA, the arbitrator concluded that "irrespective of the Exclusions Order and the Agency's February 27, 2026, pronouncement, the present grievance is properly before me for decision."

40. The arbitrator sustained NTEU's grievance, finding that the IRS violated the CBA and the Remote Work MOU and committed unfair labor practices through its cancellation of telework and remote-work arrangements. He ordered the IRS to cease and desist from the identified violations; post a notice and email bargaining-unit employees; rescind personnel actions based, in whole or in part, on the cancellation of frequent or recurring telework and remote work; and reimburse

NTEU for half of the arbitrator's fees and expenses plus all transcript costs NTEU advanced.

**<u>The IRS's Directive Regarding the Arbitration Decision</u>**

41. On July 23, 2026, the IRS distributed the Directive to IRS managers, announcing that the "[c]urrent telework policy remains in effect." Att. A. The Directive cited the Exclusions Order, the IRS's subsequent termination of the CBA, and the IRS's withdrawal from arbitration. *Id.*

42. The Directive claimed that "the arbitrators with whom the IRS and NTEU formerly contracted to adjudicate contractual disputes no longer have jurisdiction over the IRS, or any dispute NTEU unilaterally attempts to pursue." *Id.*

43. The Directive instructed managers that, "[d]ue to these changes," they should continue following existing procedures when responding to employee telework requests. *Id.* The Directive reiterated that Treasury's existing policy permitted employees up to five ad hoc telework days per year. *Id.*

44. The Directive thus treats the Exclusions Order's direction to terminate agency participation as extinguishing the arbitrator's authority to complete NTEU's already-initiated arbitration. Through the Directive, the IRS refuses to recognize the resulting decision and directs managers to continue applying its existing telework policy, contrary to the remedies the arbitrator ordered.

45. No court or administrative tribunal has invalidated the arbitrator's decision. Nevertheless, the IRS continues to treat the decision as legally ineffective and refuses to provide the relief the arbitrator ordered.

46. The IRS maintains the position it announced in its Directive. That Directive treats the completed arbitration as a nullity and deprives NTEU and the employees it represents of the remedies that the arbitrator ordered.

47. The Directive is a final agency action within the meaning of the APA. To qualify as a final agency action under the APA, an action must "(1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 620 (D.C. Cir. 2020) (citation modified). "[A]n agency's decision not to act in the face of a purported obligation to do so can constitute final agency action." *Waterkeeper All. v. EPA*, 140 F.4th 1193, 1208 (9th Cir. 2025).

48. The courts have "long taken" a "'pragmatic approach" to finality. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). A final agency action may therefore be informal, and an agency's characterization is not dispositive. *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 415 (D.C. Cir. 2020) (explaining that agency's characterization is "relevant, [but] not dispositive"). The relevant question is whether the agency's position is "definitive" and has a "direct and immediate effect on day-to-day business." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435–36 (D.C. Cir. 1986) (citation modified).

49. The Directive stated unequivocally that the "[c]urrent telework policy remains in effect" because the arbitrators on the panel "no longer have jurisdiction

over the IRS, or any dispute NTEU unilaterally attempts to pursue." Att. A. This is a "definitive" agency position with "direct and immediate effect on day-to-day business": The IRS affirmatively repudiated the arbitrator's decision and decided to keep its existing telework policy in place. *See Ciba-Geigy Corp.*, 801 F.2d at 435–36.

50. The Exclusions Order forecloses NTEU's access to relief through the FLRA. The Authority lacks jurisdiction over arbitration disputes involving excluded agencies. *U.S. Marine Corps*, 74 F.L.R.A. 541, 542–43 (2026). Nor does the statutory scheme provide a path to judicial review. An FLRA dismissal for lack of jurisdiction would not be reviewable by a court of appeals under 5 U.S.C. § 7123(a)(1). *Ass'n of Civilian Techs. v. FLRA*, 507 F.3d 697, 699–700 (D.C. Cir. 2007). A refusal by the FLRA's General Counsel to issue an unfair labor practice complaint would likewise be unreviewable. *Turgeon v. FLRA*, 677 F.2d 937, 938–40 (D.C. Cir. 1982). Accordingly, Chapter 71 provides NTEU no adequate remedy in a court for the IRS's repudiation of the arbitration decision. *See* 5 U.S.C. § 704.

## CAUSES OF ACTION

### <u>Count I</u>

### Violation of the APA—5 U.S.C § 706(2)(A)
### *Agency Action Not in Accordance with Law*

51. NTEU incorporates and reasserts the preceding paragraphs as though fully set forth herein.

52. The APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

53. The Directive is contrary to law. The underlying dispute arose, NTEU filed its grievance, and NTEU submitted the matter to arbitration while the parties' CBA remained in force. The parties' contractual grievance and arbitration obligations arising from that dispute survived the IRS's notice of termination of the agreement.

54. The CBA expressly authorized the arbitrator to determine whether a grievance was properly before him and required arbitration to proceed notwithstanding one party's refusal to participate. Consistent with the CBA, the arbitrator considered the IRS's jurisdictional objection, determined that the grievance remained properly before him, and completed the arbitration.

55. Neither the Exclusions Order nor the IRS's subsequent notice of termination of the CBA authorized the IRS to extinguish the parties' accrued grievance and arbitration rights, retroactively divest the arbitrator of authority to complete the pending proceeding, or disregard the resulting decision.

56. By determining that its notice of termination of the CBA rendered the arbitrator's decision legally ineffective, the IRS acted contrary to law. That determination must therefore be held unlawful and set aside.

## <u>Count II</u>

### Violation of the APA—5 U.S.C § 706(2)(A)
### *Arbitrary and Capricious Agency Action*

57. NTEU incorporates and reasserts the preceding paragraphs as though fully set forth herein.

58. Agency action is arbitrary and capricious when the agency fails to consider an important aspect of the problem or articulate a reasoned explanation for its decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Courts will not sustain an agency action that "is based not on the agency's own judgment but on an erroneous view of the law." *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 646 (D.C. Cir. 1998).

59. The IRS failed to explain why its withdrawal from the pending arbitration deprived the arbitrator of jurisdiction to adjudicate a grievance that arose while the CBA was in effect. The Directive cited the IRS's exclusion from Chapter 71, termination of the CBA, and withdrawal from arbitration as grounds for concluding that its former arbitrators lacked jurisdiction. But it did not explain why those subsequent events extinguished the parties' already-accrued grievance and arbitration rights or rendered the resulting decision legally ineffective.

60. In the Directive, the IRS failed to account for the Exclusions Order's limited direction to terminate agency participation in pending proceedings; the CBA's express procedures governing arbitration in a party's absence; and the fact that NTEU's grievance arose, was filed, and proceeded to arbitration before the IRS issued its notice of termination of the CBA. Each of these things bears directly on whether the IRS could lawfully disregard the arbitration decision.

61. The Directive is arbitrary and capricious because it fails to adequately explain the IRS's sudden departure from its practice of participating in the grievance and arbitration process even after the Exclusions Order issued.

62. The Directive further failed to account for NTEU's reliance on the parties' negotiated dispute-resolution procedures. The IRS processed and denied the grievance on its merits after the Exclusions Order was published and later acknowledged that the CBA remained in effect. NTEU prosecuted arbitration under that agreement, presented evidence and argument, incurred arbitration expenses, and obtained a favorable arbitration decision. The Directive does not address those circumstances or the consequences of disregarding the completed proceeding.

63. By failing to consider these material circumstances or to provide a reasoned explanation for treating the arbitrator's decision as legally ineffective, the IRS acted arbitrarily and capriciously. The Directive must therefore be set aside.

## REQUEST FOR RELIEF

Wherefore, Plaintiff NTEU respectfully requests that this Court:

A. Declare that the IRS's Directive is contrary to law in determining that Executive Order 14251 and the IRS's subsequent termination of the CBA extinguished accrued grievance and arbitration rights, deprived the arbitrator of authority to complete NTEU's already-initiated arbitration, and rendered the resulting decision legally ineffective;

B. Declare that the IRS's Directive is arbitrary and capricious because the IRS failed to consider material circumstances bearing on the continued legal effect of the arbitration decision, or provide a reasoned explanation for its decision to disregard the arbitration decision;

C. Hold unlawful and set aside the IRS's Directive under 5 U.S.C. § 706(2)(A);

D. Award NTEU reasonable attorneys' fees and costs to the extent authorized by law; and

E. Grant such other declaratory or equitable relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/ Paras N. Shah*
PARAS N. SHAH
General Counsel
D.C. Bar 983881

*/s/ Allison C. Giles*
ALLISON C. GILES
Associate General Counsel
D.C. Bar 439705

*/s/ Kathryn W. Bailey*
KATHRYN W. BAILEY
Assistant Counsel
D.C. Bar 1643256

*/s/Thaxton Blaise Springfield*
THAXTON BLAISE SPRINGFIELD
Assistant Counsel
D.C. Bar 90019358

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C. 20001
(202) 572-5500
paras.shah@nteu.org
allie.giles@nteu.org
kathryn.bailey@nteu.org
blaise.springfield@nteu.org

October 29, 2026

Counsel for Plaintiff NTEU